A.C. DAVENPORT & SON CO.,
Plaintiff-Appellee,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 82–2011.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 20, 1983.
Decided March 25, 1983.

---

John S. Miller, III, Asst. U.S. Atty., Chicago, Ill., Dan K. Webb, U.S. Atty., for defendant-appellant.

Martin M. Lucente, Jr., Chicago, Ill., for plaintiff-appellee.

Before BAUER and WOOD, Circuit Judges, and EVANS,* District Judge.

* The Honorable Terence T. Evans, Judge of the United States District Court for the Eastern District of Wisconsin, is sitting by designation.

BAUER, Circuit Judge.

The issue in this appeal is whether the General Services Administration (GSA), having mistakenly made duplicate payments to both the contractor and subcontractor under a government contract, may recover the overpayments from the subcontractor. The district court held that it may not. We affirm.

The GSA originally contracted with Almark, Inc. for bulletin boards. Almark then subcontracted with Davenport to manufacture these bulletin boards. Because of Almark's financial instability Davenport agreed to accept the subcontract only if Almark guaranteed payment. Accordingly, Almark directed the GSA to send Almark's payment directly to Davenport so that Davenport would be able to deduct the amounts due it before Almark obtained access to the remaining proceeds.

Two documents effected this financial arrangement. First, Almark sent a letter to the GSA requesting that their contract be modified to accommodate a change in the payment address. A GSA officer approved this request. Next, Almark executed a corporate resolution authorizing the First National Bank to accept, for deposit in a special account, checks that were made payable to Almark, Inc. c/o Dav-son.[1] Under this resolution Davenport's president, the only person authorized to withdraw funds from the account, was to deduct the amount due Davenport before crediting the rest of the proceeds to Almark.

The GSA, however, failed to follow the contract modification it had approved and sent two checks directly to Almark. When the GSA learned that two checks had been sent to the wrong address, it agreed to stop payment on these checks and issue a duplicate check for the total amount mistakenly sent to Almark. Although the GSA issued a duplicate check, it never stopped payment on the Almark checks. The GSA never attempted to recoup the payments from Almark. Subsequently, Almark declared bankruptcy.

1. Davenport was formerly called Dav-son or Davson.

In November 1977, approximately seven months after the GSA issued the check to Davenport, the GSA questioned the legality of Davenport's deposit of Almark's checks and demanded that Davenport return the duplicate payments. When Davenport refused, the GSA began setting off amounts due Davenport under unrelated contracts. Davenport then initiated this action to recover the amounts set off.

The government argues strenuously, as it did in the district court, that Almark's letter to the government changing the payment address, construed in conjunction with Almark's corporate resolution authorizing Davenport to endorse and deposit Almark's checks, was an illegal assignment in violation of the Assignment of Claims Act, 31 U.S.C. § 203. The government contends that the assignment did not comply with the Act's requirements and that the government did not waive these requirements. For these reasons, it asserts that the Assignment of Claims Act is an affirmative defense to Davenport's claim for the monies withheld.

The district court, however, held that the issues of whether the documents amounted to an assignment in violation of the Assignment of Claims Act or whether the government waived compliance with the Act were "nothing more than 'red herrings.'" *A.C. Davenport & Son Co. v. United States,* 538 F.Supp. 730, 733 (N.D.Ill.1982). It concluded that either the agreement between Davenport and Almark was not an assignment or, if it was, it was not a valid assignment.

Next, applying the Illinois Commercial Code, Ill.Rev.Stat. ch. 26 § 1–101 *et seq.,* the district court held that Davenport took the reissued government check as a holder in due course, without notice of any claim or defense against it. The district court concluded that because Davenport had no way of knowing that the stop order had not been effected, Davenport took the check free and clear of the defense of double payment. Noting that the equities overwhelmingly favored Davenport, the only party who had performed without fault, the district court concluded that the government should not be able to pass on the consequences of its own mistake to an innocent party.

■ The government challenges the district court's finding that Davenport performed without fault. The government alleges that by purposely attempting an illegal assignment Davenport created the very complications the Assignment of Claims Act was designed to prevent. Emphasizing that the statute was designed to prevent multiple payments of claims, to relieve the government of the responsibility of investigating assignments and to insure that the government need deal only with the original claimant, the government devotes a considerable portion of its brief to an analysis of the policy considerations underlying the statute. Yet, the government continues to ignore, as it did in the court below, the undisputed fact that the Almark-Davenport agreement was not an assignment within the meaning of the statute[2] and thus, the statute can have no application here. We agree with the district court that the government may not assert the Assignment of Claims Act as an affirmative defense.

**2.** 31 U.S.C.A. § 203 reads, in pertinent part:

All transfers and assignments made of any claim upon the United States or any part or share thereof, or interest therein, whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders, or other authorities for receiving payment of any such claim, or of any part or share thereof, except as hereinafter provided, shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof. Such transfers, assignments, and powers of attorney, must recite the warrant for payment and must be acknowledged by the person making them, before an officer having authority to take acknowledgements of deeds, and shall be certified by the officer; and it must appear by the certificate that the officer, at the time of the acknowledgement, read and fully explained the transfer, assignment, or warrant of attorney to the person acknowledging the same.

We next consider the government's argument that Davenport is not entitled to holder in due course status because of its relationship with Almark and its knowledge of the government's prior payments. Initially, the government argues that the rights and obligations of the parties to the government contract should be determined under federal law, rather than state commercial law. It maintains that by applying state commercial law, the result achieved frustrated Congress' intent to limit assignments of federal claims and contracts. Moreover, it alleges that even if this case should be decided under state commercial law, Davenport did not act in good faith or without notice. For the reasons stated briefly below, we cannot agree.

The Illinois Commercial Code defines good faith as "honesty in fact in the conduct or transaction concerned." Ill.Rev. Stat. ch. 26 § 1–201. Almark asserts that Davenport's conduct did not comport with the statutory definition because: (1) Davenport knew that Almark was in shaky financial condition when it accepted the subcontract; (2) Davenport knew at the time it requested the GSA to issue a duplicate check that the stop payment order had not actually been effected; (3) Davenport should have realized that a stop payment order on two checks which had been issued at least two months earlier was likely to be ineffective; and (4) Davenport never inquired about the effectiveness of the stop payment order.

The government engages in speculation as to Davenport's motives, urging that Davenport's failure to inquire about the effectiveness of the stop payment order "represents a disingenuous strategy, at the very least." Appellant's br. at 20. Yet, the government fails to mention that Davenport had threatened to stop further deliveries, which it had a legal right to do, if it did not receive payment for its prior deliveries. If Davenport had discontinued delivery, the government would have had recourse against Almark, but not Davenport. As the district court noted, "[u]ndoubtedly it was because of this fact and in order to insure continued delivery that the government consented to stop payment on the checks sent directly to Almark and to issue a duplicate check to Almark c/o Davenport." *A.C. Davenport & Son Co. v. United States,* 538 F.Supp. 730, 734 n. 5 (N.D.Ill.1982).

The government urges us to impose responsibility on Davenport not only for its acts, but for the GSA's as well while at the same time urging us to hold the GSA harmless for failing to carry out obligations it voluntarily assumed. This we decline to do. Moreover, we find it significant that the government fails to explain why, having agreed to issue a stop payment order, the GSA did not do so and did not discover its error for seven months. Based on the undisputed record, we find that Davenport acted in good faith and is an innocent third party who should be protected. 3 A. CORBIN, CONTRACTS § 617 at 756–57 (1960).

Similarly, we agree with the district court that Davenport took the check without notice of the government's defense of duplicate payments. The government has cited no authority to support its theory that Davenport had a duty to inquire about the effectiveness of the stop payment order. We do not believe it had this duty. The GSA agreed to stop payment; Davenport had every right to believe that the GSA would issue the stop payment order and that the order would be effectuated, just as the GSA had a right to expect Davenport to deliver the merchandise as promised. Davenport performed its obligations; the GSA did not. Thus, the GSA must bear the loss.

We agree with the district court that Davenport was a holder in due course who took the reissued government check in good faith and without notice. We hold that the government may not raise the Assignment of Claims Act as an affirmative defense. Accordingly, the opinion of the district court is

AFFIRMED.