In re R & L REFUNDS, INC., Debtor.

R & L REFUNDS, INC., Plaintiff,

v.

UNITED STATES of America, Defendant.

Bankruptcy No. 1–84–00243.
Adv. No. 1–84–0034.

United States Bankruptcy Court,
W.D. Kentucky.

Oct. 18, 1988.

**106**

Lee L. Coleman, Hughes & Coleman, Bowling Green, Ky., for plaintiff.

Michael F. Spalding, Asst. U.S. Atty., Louisville, Ky., Michael J. Salem, Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

Ray B. White, Bowling Green, Ky., Trustee.

## MEMORANDUM OPINION

J. WENDELL ROBERTS, Bankruptcy Judge.

This Adversary Proceeding is before the Court on the parties' cross-motions for Summary Judgment pursuant to Fed.R.Civ. Pro. 56 and Fed.R.Bankr.Pro. 7056. Briefs in support of the parties' respective positions have been filed and reviewed. For the reasons set forth below, we overrule the Plaintiff's Motion for Summary Judgment and sustain the Defendant's Motion for Summary Judgment.

The material facts which give rise to this action are as follows. R & L Refunds, Inc. ("Plaintiff") is in the business of loaning money to individuals by "discounting" the refund due those individuals from their income tax returns and then taking an assignment of the actual refund when it becomes due.

According to the parties' joint stipulation of facts filed on September 22, 1987, a taxpayer would come into the Plaintiff's place of business in order to sell his/her refunds in order to get immediate use of the money. The Plaintiff would pay the taxpayer a portion of his/her anticipated return and, in exchange, the taxpayer would execute a document styled "Contract of Sale/Assignment of Federal Returns"

and a document styled "Power of Attorney." The Power of Attorney purported to grant to the President of the Plaintiff, R & L Refunds, the power to receive and sign the income tax refund check and to dispose of the proceeds. In order for the Plaintiff to be assured of receiving the checks, the address of the Plaintiff was placed on the income tax returns. Each federal return then was mailed to the Internal Revenue Service.

As a result of "discounting" operations, such as R & L Refunds, the I.R.S. claims that a variety of problems have arisen including confusion as to the taxpayers last known address and double claiming of tax refunds. In 1984, the I.R.S. commenced what is known as a diversion program whereby the I.R.S. attempted to identify discounted returns. When refunds were identified as having discounting addresses on the returns, the I.R.S. would change the addresses on the returns and send those refunds to the taxpayer's address as it was last known to the I.R.S.

On May 10, 1984, R & L Refunds filed a petition under Chapter 11 of the Bankruptcy Code. On July 5, 1984, the Plaintiff filed this adversary proceeding against the United States Government seeking a turnover of approximately $190,000.00 which was the estimated value of the refund checks which had been assigned to the Plaintiff by the various taxpayers. An additional stipulated fact was that on January 8, 1984, the district director of the Internal Revenue Service in Louisville wrote to Mr. Lowell Hughes, President of R & L Refund, Inc. advising him that the actions being performed by him and R & L Refunds did not violate the Internal Revenue Code of 1954, relative to income tax return preparation. Following a pretrial conference on April 27, 1988, the Court ordered the parties to file cross-motions for summary judgment within thirty days. Identical issues have been raised by both motions for summary judgment. First, we must determine whether the Anti–Assignment Act, 31 U.S.C. § 3727, bars the Plaintiff from bringing this action. If we conclude that the Plaintiff is not barred from bring-

ing this action, we then must determine whether a turnover proceeding is the proper procedure for the recovery of property which is no longer in the possession of the party from whom recovery is sought.

Addressing the first issue, the United States argues that the Anti–Assignment Act bars any relief to the Plaintiff in this particular action. Relevant portions of the Anti–Assignment Act, 31 U.S.C. § 3727 are as follows:

Section 3727. Assignment of Claims.

(a) In this section, "assignment" means—

(1) a transfer or assignment of any part of a claim against the United States Government or of an interest in the claim; or

(2) the authorization to receive payment for any part of the claim.

(b) An assignment may be made only after a claim is allowed, the amount of the claim is decided, and warrant for the payment of the claim has been issued. The assignment shall specify the warrant, must be made freely, and must be attested to by two witnesses. The person making the assignment shall acknowledge it before an official who may acknowledge a deed, and the official shall certify the assignment. The certificate shall state that the official completely explained the assignment when it was acknowledged. An assignment under this section is valid for any purpose.

The government contends that since an assignment may be made only after a claim is allowed, the amount of the claim is decided and a warrant for payment of the claim has been issued pursuant to the Act, then all assignments in this case are rendered "null and void" since all of them were made *before* the tax returns were ever transmitted to the Internal Revenue Service.

The Plaintiff argues that the Act should not be interpreted literally; but, rather it should be interpreted in light of its sole purpose of protecting the government while continuing to give effect to the contract assignment between the individual parties. *Martin v. National Surety Co.,* 300 U.S. 588, 596, 57 S.Ct. 531, 534, 81

L.Ed. 822, 826 (1936); *Segal v. Rochell,* 382 U.S. 375, 384, 86 S.Ct. 511, 517, 15 L.Ed.2d 428, 435 (1966).

The Plaintiff also argues the case of *A.C. Davenport & Son v. United States,* 538 F.Supp. 730 (N.D.Ill.), Aff'd, 703 F.2d 266 (7th Cir.1983) wherein the Court dismissed the government's argument that the contract modification violated the Anti–Assignment Act as nothing more than a red herring. However, in the *Davenport* case, the District Court found that the agreement between the parties was not an assignment or, at least, not a valid assignment. Since the Anti–Assignment Act clearly involves valid assignments, it is no surprise that the Court would dismiss the government's argument to apply the Anti–Assignment Act as a red herring.

In *Martin v. National Surety Co., supra,* the Court stated that the provisions of the Anti–Assignment Act voiding certain assignments are primarily for the benefit of the government so that it would be in no danger "of becoming embroiled in conflicting claims, with delay and embarrassment and the chance of multiple liability." Other courts interpreting the statute have explained its purpose to be to "prevent persons of influence from buying up claims against the United States, which might then be improperly urged upon officers of the government and to prevent possible multiple payment of claims, to make unnecessary the investigation of alleged assignments, and to enable the Government to deal only with the original claimant." *United States v. Shannon,* 342 U.S. 288, 72 S.Ct. 281, 96 L.Ed. 321 (1952) citing *United States v. Aetna Surety Co.,* 338 U.S. 366, 373, 70 S.Ct. 207, 211, 94 L.Ed. 171 (1949). To our knowledge, no court has nullified an assignment as between the individual private parties simply because it failed to comply with the statute.

In light of the foregoing, we are persuaded to rule in favor of the United States. Since the purpose of the Act is to protect the government from multiple litigation with parties other than the original claimant, we can see no better case than the present one where the Act would apply.

The Plaintiff has sued the federal government for a turnover of income tax refund checks originally belonging to individual taxpayers and not the Plaintiff. While we find no reason to invalidate the assignments as between the Plaintiff and the individual taxpayers, we conclude that the Anti–Assignment Act bars the Plaintiff from bringing this action against the United States for the recovery of the monies. Since we find that the Plaintiff's action against the United States is barred under the Act, we decline to address the second issue involving the appropriateness of the turnover proceeding.

This Memorandum–Opinion constitutes findings of fact and conclusions of law pursuant to Fed.R.Bankr.Pro. 7052.

An Order consistent with this Memorandum–Opinion will be entered this day.