**AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 215–86C.

United States Claims Court.

July 9, 1991.

Edward J. Whalen, Chicago, Ill., for plaintiff.

Mary Mitchelson, Washington, D.C., with whom were Director David M. Cohen and Acting Atty. Gen. Stuart M. Gerson, for defendant.

## OPINION

ROBINSON, Judge:

The sole remaining issue before the court is the merit of a counterclaim brought by defendant, the Defense Logistics Agency (DLA), against plaintiff, American National Bank and Trust of Chicago (American), seeking recovery of $764,897.76 paid to plaintiff by DLA pursuant to an alleged assignment. Plaintiff originally brought suit under the Tucker Act, 28 U.S.C. § 1491 for breach of contract. Plaintiff's claim was for $218,277.94 in progress payments from DLA Contract No. DLA–100–80–C–3347 and was based on an assignment agreement with a government contractor, St. Bernice Manufacturing Company (St. Bernice). Both the claim and the counterclaim are based on the Assignment of Claims Act, also known as the Anti–Assignment Act, (the Act).[1]

The court previously dismissed plaintiff's claim pursuant to RUSCC 12(b)(4) for failure to state a claim on which relief may be granted. *American Nat. Bank & Trust Co. v. United States,* 22 Cl.Ct. 7 (1990). The court retained jurisdiction over the counterclaim[2] but deferred its ruling to allow for further proceedings on the mer-

its. The counterclaim is now before the court on the parties' cross-motions for summary judgment. For the reasons which follow, defendant's motion for summary judgment will be granted, and plaintiff's cross-motion for summary judgment will be denied.

### Factual Background

The factual background, as well as the findings of fact and conclusions of law presented in this court's opinion in *American Nat. Bank & Trust Co. v. United States,* 22 Cl.Ct. 7 (1990), are incorporated by reference into the present discussion of the counterclaim.

### Contentions of the Parties

Defendant asserts that it has a right and an obligation to recover any monies wrongfully paid from the public treasury. Since the court previously determined that the assignment did not satisfy the Act's requirements and that DLA did not have knowledge sufficient to waive those requirements, defendant contends that any protection against recovery provided to assignees by the Act does not protect plaintiff. Under the circumstances of this case, defendant argues that the payments to plaintiff totalling $764,897.76 were erroneous and must be recovered. Further, defendant contends that plaintiff's subsequent disposition of the payments is irrelevant to defendant's legal right of recovery.

Alternatively, defendant maintains that if the assignment was valid under the Act, the progress payments were erroneously made because St. Bernice breached the contract, thus forfeiting its right to retain that money. According to defendant, plaintiff, as assignee, should not be allowed to claim a right greater than that of its assignor. Defendant adds that requiring plaintiff to return the payments is not inequitable be-

---

1. 31 U.S.C. § 203 (1978) and 41 U.S.C. § 15 (1978). In *American Nat. Bank & Trust Co. v. United States,* 22 Cl.Ct. 7 (1990), the court erroneously cited to 31 U.S.C. § 3727 which superseded 31 U.S.C. § 203. The proper citation is 31 U.S.C. § 203.

2. Dismissal of plaintiff's complaint pursuant to RUSCC 12(b)(4) for failure to state a claim upon which relief can be granted does not divest the court of jurisdiction to hear defendant's counterclaim. *See Joseph Morton Co. v. United States,* 3 Cl.Ct. 780, 783 (1983), *aff'd* 757 F.2d 1273 (Fed.Cir.1985).

cause plaintiff, in a situation analogous to that of a financier, should bear the risk of the assignor's default.

Plaintiff argues that the assignment's invalidity under the Act is not related to the question of whether the payments were erroneous. Citing *McKnight v. United States*, 98 U.S. 179, 25 L.Ed. 115 (1879), plaintiff contends that payments made under an invalid assignment are not erroneous payments which can be recovered. Plaintiff asserts that the assignment was valid under Illinois state law, and therefore, it had a legal right to the payments at the time they were received. Plaintiff believes that the cases cited by defendant to show that the payments should be recoverable are distinguishable by circumstances that indicate that either the recipient was not entitled to the payment or that the Government had no authority to make the payment.

Plaintiff next argues that equitable estoppel should bar defendant's recovery because it relied on the representations of DLA agents when submitting notice of the assignment, and because DLA did not notify it that the assignment was considered invalid. According to plaintiff, defendant's full recovery would result in an inequitable windfall because DLA received partial performance, and because approximately 90 percent of the payments plaintiff received were forwarded to an unrelated third party, Trident Industries (Trident), which provided raw materials for the performance of the contract.

In answer to defendant's alternative argument that St. Bernice's breach of contract requires restitution of the payments, plaintiff argues that (1) defendant should not be allowed to recover payments that have been recouped through partial performance completed prior to St. Bernice's breach of contract; and (2) plaintiff is not responsible for defendant's loss resulting from St. Bernice's breach of contract.

Alternatively, plaintiff contends that summary judgment for defendant is not appropriate because questions remain concerning material facts including the amount of damages incurred, and whether American actually intended to hide the true nature of the financing arrangement.

## DISCUSSION

### A. Summary Judgment.

 Summary judgment is a useful tool for disposing of factually unsupported claims or defenses, thus saving the court and the parties the unnecessary expense and delay of a trial. The procedure is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Only disputes over material facts, or facts that might significantly affect the outcome of the suit under the governing law, preclude an entry of judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–8, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986).

 When the parties present cross-motions for summary judgment, the court is not required to grant judgment as a matter of law for one side or the other. Each party's motion must be separately evaluated on its own merits with care taken to draw all reasonable inferences against the party whose motion is under consideration. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987). However, the non-moving party must designate specific facts which show that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The parties are in agreement concerning the facts which are material to the adjudication of the counterclaim.[3] The primary issues presented for decision concern the purported assignment and defendant's right to recover monies it paid pursuant to the purported assignment. These issues

---

3. Plaintiff has contended that questions remain concerning certain allegedly material facts. As discussed later in this opinion, the court has determined that these "disputed" facts are not material to this proceeding.

call for conclusions of law, and are therefore ripe for summary judgment.

## B. Analysis.

 The Act is designed to protect the Government from secret assignment arrangements, to prevent possible multiple claims, and to make unnecessary the investigation of alleged assignments. *See McKenzie v. Irving Trust Co.*, 323 U.S. 365, 369, 65 S.Ct. 405, 407, 89 L.Ed. 305 (1945); *Tucker v. United States*, 7 Cl.Ct. 374, 375–76 (1985). However, the Government may elect to recognize an assignment despite the bar of the Act. *See Tuftco Corp. v. United States*, 222 Ct.Cl. 277, 285, 614 F.2d 740, 745 (1980); *Maffia v. United States*, 143 Ct.Cl. 198, 203, 163 F.Supp. 859, 862 (1958). Accordingly, an assignment effectively binds the Government if it satisfies certain requirements of the Act, or if the Government waives those requirements and recognizes the assignment. Whether the Government has waived the requirements enumerated in the Act is determined by a totality of circumstances test. The court must consider knowledge, assent, and any actions consistent with the terms of the assignment. *Tuftco Corp. v. United States*, 222 Ct.Cl. 277, 287, 614 F.2d 740, 746 (1980).

 In its earlier opinion the court determined that the assignment arrangement between St. Bernice and plaintiff concerning Contract No. DLA–100–80–C–3347 did not effectively bind DLA because the purported assignment did not satisfy the Act's requirements [4] and, looking at the totality of circumstances, DLA did not waive plaintiff's failure to comply with those requirements. Defendant does not dispute that officials in both the administrative contracting office (ACO) and the disbursing office (DO) received certain financial documents sent by plaintiff, that those offices acknowledged their receipt by phone, and that the DO sent progress payments totalling $764,897.76 to plaintiff. Although these facts appear to show some degree of knowledge, assent, and action, key elements in proving a recognition of the assignment, the documentation provided by plaintiff did not pertain to the actual assignment, and did not adequately disclose the true nature of the financing arrangement.

The court previously found that by not providing DLA with complete copies of its September 1980 and January 1981 Agreements, which documents embodied plaintiff's purported assignment, plaintiff "effectively hid from DLA the true nature of the financing agreement." *American Nat. Bank & Trust Co. v. United States*, 22 Cl.Ct. 7, 17 (1990). The facts show that plaintiff submitted copies of a 1976 security agreement between St. Bernice and Mercantile Bank of Chicago and a 1979 assignment of that security interest from Mercantile to plaintiff. Both of these documents were executed prior to the award of the government contract to St. Bernice and could not possibly have contemplated the assignment in question. No information on the terms of the purported assignment contained in the actual agreements of September 1980 and January 1981 was provided to DLA.[5]

---

**4.** In this case, in order to prove the existence of a valid statutory assignment, plaintiff must show that it: (1) is a qualified financial institution; (2) loaned money or at least made money available for the performance of the DLA contract; and (3) provided true and correct copies of the documents of assignment to both the contracting and disbursing officers. In its prior opinion the court held that the assignment was not valid, and therefore that the government could not be bound under the Act because plaintiff: (1) did not provide financing of any sort, direct or indirect, to St. Bernice to support contract performance; and (2) failed to provide true and correct copies of the documents of assignment to both the contracting and disbursing officers. *See American Nat. Bank & Trust Co. v. United States*, 22 Cl.Ct. 7, 16–17 (1990).

**5.** The final version of the financing arrangement contemplated by these latter agreements allowed plaintiff to apply 10 percent of the payments to the unrelated, pre-existing debt St. Bernice owed to plaintiff under the 1976 security agreement and the 1979 assignment. The remaining 90 percent was to be sent to Trident. This arrangement apparently left no part of DLA's progress payments to cover operating expenses incurred by St. Bernice in performing the contract. There is also no evidence that St. Bernice had business income or sources of operating capital other than these progress pay-

Given the purposes of the Act, plaintiff clearly failed to provide DLA with complete and correct information. The facts in this case, therefore, preclude a finding that either the ACO or the DO had adequate knowledge of the actual assignment.[6] Without such knowledge, neither DLA's officers' telephone acknowledgements, nor DLA's subsequent payments constitute either assent to the assignment or action consistent with the terms of the assignment. Thus, under the *Tuftco* totality of circumstances test, the payments made by DLA were not made pursuant to a waiver of the requirements of the Act.

■ Plaintiff's contention that the payments were not erroneous despite the invalidity of the assignment is simply wrong. Since the assignment was not binding upon DLA, DLA had no obligation or authority to make payments of any sort to plaintiff. The appropriations clause of the Constitution prohibits the Government from paying money from the Treasury absent a Congressional appropriation. *See Office of Personnel Management v. Richmond,* 496 U.S. ——, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990). Without the proper authority, DLA's payments to plaintiff were contrary to the law and clearly erroneous.

■ Established law clearly provides that the Government may recover funds which its agents have wrongfully, erroneously, or illegally paid. No statute is necessary to authorize the Government to sue in such a case. *United States v. Wurts,* 303 U.S. 414, 415, 58 S.Ct. 637, 638, 82 L.Ed. 932 (1938). *Accord Fansteel Metallurgical Corp. v. United States,* 145 Ct. Cl. 496, 499–500, 172 F.Supp. 268, 270 (1959). Nor can the Government's recov-

ery be estopped by the mistakes of its officers or agents. *See Aetna Casualty & Surety Co. v. United States,* 208 Ct.Cl. 515, 520, 526 F.2d 1127, 1130 (1975), *cert. denied,* 425 U.S. 973, 96 S.Ct. 2172, 48 L.Ed.2d 797 (1976). This principle applies to defendant's present attempt to recover DLA's erroneous payments to plaintiff.

Plaintiff relies heavily on the holding in *McKnight v. United States,* 98 U.S. 179, 185–86, 25 L.Ed. 115 (1879). In that case a government contractor owed money to its assignee, and the Government in turn was obligated to the contractor under the contract. The Government paid the assignee even though the assignment was void under the law. The Supreme Court held that although the assignment was void, the Government could not counterclaim to recover the amount paid because there was nothing contrary to good morals or conscience in the payment or receipt of the money. *McKnight v. United States,* 98 U.S. 179, 185–86, 25 L.Ed. 115 (1879).[7]

The Supreme Court ruled on *McKnight* in 1879. Since that time the *McKnight* decision has never been cited as authority for barring Government recovery of funds paid pursuant to an invalid assignment. However, the Supreme Court has since ruled on more than one occasion that the Government may recover funds which have been wrongfully, erroneously, or illegally paid. *See United States v. Wurts,* 303 U.S. 414, 415, 58 S.Ct. 637, 638, 82 L.Ed. 932 (1938); *Wisconsin C.R. Co. v. United States,* 164 U.S. 190, 210, 17 S.Ct. 45, 51, 41 L.Ed. 399 (1896); *United States v. Burchard,* 125 U.S. 176, 180, 8 S.Ct. 832, 833, 31 L.Ed. 662 (1888).

ments. Because DLA was essentially financing the contract through its progress payments, the court seriously doubts that DLA would have approved the assignment if the true nature of the financing agreement had been known.

6. The issue of knowledge, which is necessary to infer a recognition of a noncomplying assignment, is distinctly different from the issue of notice, which is a requirement of the Act that may be waived.

7. Plaintiff incorrectly cites two additional cases as authority for the proposition that the Govern-

ment may not recover on its counterclaim. *Martin v. National Surety Co.,* 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed. 822 (1937); *Lopez v. United States,* 24 Ct.Cl. 84 (1889). In both of these cases the court held that an assignor has no claim against the Government for payments made to an assignee pursuant to an assignment which was invalid under the Act. Neither case states that the Government may not recover funds erroneously paid to an assignee under an invalid assignment.

Furthermore, the circumstances surrounding the assignment in the present case are materially different from those in *McKnight.* The Court of Claims, which originally tried the *McKnight* case, stated that the Government had suffered no loss because the contractor had fully performed his obligation under the contract. The court reasoned that if the Government had recovered the money, it would not have been entitled to keep it. Defendant was not entitled to recover money paid in good faith and to the satisfaction of both the assignee and the assignor. *See McKnight v. United States,* 13 Ct.Cl. 292, 313 (1877).

The court's opinion also found that the Treasury had a complete understanding of the assignment and the relevant facts. *See McKnight v. United States,* 13 Ct.Cl. 292 (1877). In affirming the decision, the Supreme Court stressed that the Government's recovery was not proper because the facts were known to all parties, and because there was no evidence of indirection, concealment, or improper purpose. *See McKnight v. United States,* 98 U.S. 179, 186, 25 L.Ed. 115 (1879).

■ In contrast to *McKnight,* DLA's officers did not fully comprehend the nature of the assignment in this case, and therefore, they could not have waived the requirements of the Act. Furthermore, DLA did in fact suffer a significant loss. In fact, any monies recovered through its counterclaim will not be due to be paid to St. Bernice or any third party. Accordingly, the circumstances in this case are materially different than those in *McKnight,* and the Supreme Court's ruling upholding the Court of Claims findings does not bar defendant's counterclaim in this case. Simply stated, this situation is not one in which "there is nothing contrary to good morals or conscience in the payment or receipt of money."

■ Plaintiff's contention that the assignment was valid under Illinois state law, thereby giving Plaintiff a right to the payments at the time they were made, is also without merit. If an assignment does not satisfy the Act's requirements, the Government is not required to recognize that assignment unless it so chooses. As the court explained in its previous opinion, Illinois state law is entirely irrelevant to the Government's obligation with respect to the assignment. *American Nat. Bank & Trust Co. v. United States,* 22 Cl.Ct. 7, 16 (1990).

Defendant asserts that plaintiff is not covered by the provisions of the Act which afford protection to assignees who take an assignment under the Act. 31 U.S.C. § 203 and 41 U.S.C. § 15[8] provide as follows:

In any case in which moneys due or to become due under any contract *are or have been assigned pursuant to this section,* no liability of any nature of the assignor to the United States or any department or agency thereof, whether arising from or independently of such contract, shall create or impose any liability on the part of the assignee to make restitution, refund, or repayment to the United States of any amount heretofore since July 1, 1950, or hereafter received under the assignment. (emphasis added).

American cannot rely on this provision for two reasons. First, a careful reading of this provision of the Act reveals that the protection thereby afforded to an assignee applies only to liability arising from acts of the assignor. Plaintiff's liability to the Government on its counterclaim, however, is not premised upon an act of St. Bernice, but rather, it is based on plaintiff's receipt from DLA of erroneous payments. Second, the protection provided to an assignee by the Act only applies to an assignment which satisfies the requirements of the Act. If the assignment is not "pursuant to this section," no protection arises. As set forth in the analysis above, plaintiff failed to comply with the Act, and therefore, it cannot now rely on another provision of the Act for protection against liability.

■ Plaintiff argues several grounds for estopping defendant from recovering on its counterclaim. Although these

8. Both sections have identical provisions.

grounds will be discussed separately, the same general rule applies to each. To successfully assert a claim of estoppel against the Government,[9] the necessary elements in an assignment dispute which must be shown are as follows:

(1) the Government must know the true facts;

(2) the Government must intend that its conduct be acted on or must so act that the assignee asserting the estoppel has a right to believe it so intended;

(3) the assignee must be ignorant of the true facts; and

(4) the assignee must rely on the Government's conduct to his injury.

*See American Elec. Laboratories, Inc. v. United States,* 774 F.2d 1110, 1113 (Fed. Cir.1985); *Emeco Indus., Inc. v. United States,* 202 Ct.Cl. 1006, 1015, 485 F.2d 652, 657 (1973).

The court found in its earlier opinion that DLA did not know the true facts about the financial arrangements of American, St. Bernice and Trident, and that plaintiff was knowledgeable about these arrangements. Accordingly, plaintiff's estoppel arguments are unavailing.[10]

Plaintiff first contends that defendant should be estopped from arguing that it did not waive the Act's requirements. Plaintiff bases this argument on its alleged reliance on DLA instructions to "just send a letter" when it submitted notice of the assignment. This argument is without merit. An instruction to send a letter does not necessarily imply that the actual assignment agreement need not be furnished as an enclosure or that any surrounding, highly material circumstances need not be disclosed. In any event, unless the letter notice accurately described the assignment, plaintiff has no basis for arguing that a waiver occurred. In this case plaintiff's notification omitted critically important details of the arrangement. Therefore, it did not give rise to a waiver.

■ Clearly, defendant cannot be estopped from asserting that the requirements of the Act were not met. The requirements for an assignee to receive payment under the Act are set forth plainly by statute. The Government may not be estopped by the erroneous advice of its agents when the conditions for payment are prescribed by statute. *See Office of Personnel Management v. Richmond,* 496 U.S. ——, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990). "Undoubtedly, the general rule is that the United States are [sic] neither bound nor estopped by the acts of their officers and agents in entering into an agreement or arrangement to do or cause to be done what the law does not sanction or permit." *Wilber Nat. Bank v. United*

---

**9.** Significant doubt exists that estoppel may ever be asserted against the Government. Early Supreme Court cases held that equitable estoppel does not apply to the Government. *Lee v. Munroe & Thornton,* 11 U.S. 366, 3 L.Ed. 373 (1813); *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). Dicta in recent cases has suggested however, that there might be some situations in which estoppel against the Government might be appropriate. *Office of Personnel Management v. Richmond,* 496 U.S. ——, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990).

In sum, courts of appeals have taken our statements as an invitation to search for an appropriate case in which to apply estoppel against the Government, yet we have reversed every finding of estoppel that we have reviewed. Indeed, no less than three of our most recent decisions in this area have been summary reversals of decisions upholding estoppel claims.

*Office of Personnel Management v. Richmond,* 496 U.S. ——, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990).

"Opinions have differed on whether [the Supreme Court] has ever accepted an estoppel claim in other contexts, (citations omitted), but not a single case has upheld an estoppel claim against the Government for the payment of money." *Office of Personnel Management v. Richmond,* 496 U.S. ——, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990). Although this case involves a claim by the Government for the recovery of erroneous payments, as opposed to a claim against the Government for the payment of money, the same principle applies. Equity does not prevent the Government from reclaiming money paid out erroneously. *See Aetna Casualty & Surety Co. v. United States,* 208 Ct.Cl. 515, 520, 526 F.2d 1127, 1130 (1975). Although the Supreme Court's recent decisions indicate a possibility that estoppel may be asserted against the Government in an appropriate case, the facts show that it is not appropriate in this situation.

**10.** Because the court has previously held that two of the requisite estoppel elements are lacking, it need not address the actions and intent of DLA, or American's reliance on those actions.

*States,* 294 U.S. 120, 123, 55 S.Ct. 362, 363, 79 L.Ed. 798 (1935). That principle applies with equal force in this case. In sum, even if a DLA official erred in his instructions to plaintiff, no estoppel may be asserted as a result.

■ Plaintiff's arguments that defendant should be estopped because it relied on the finality of DLA payments will not suffice either. As previously discussed, two essential requirements for application of the doctrine of equitable estoppel are (1) that the Government have full knowledge of the facts and (2) that the party seeking estoppel not have knowledge of the facts. While neither the ACO or the DO had full or accurate knowledge of the facts, plaintiff clearly did. Thus, equitable estoppel will not bar defendant from seeking full restitution in this case.

■ Plaintiff next argues that it should not be required to return the portion of the payments it forwarded to Trident.[11] However, plaintiff's disposition of the payments does not preclude application of established precedent allowing the Government to recover funds its agents have wrongfully, erroneously, or illegally paid. *See United States v. Wurts,* 303 U.S. 414, 58 S.Ct. 637, 82 L.Ed. 932 (1938). Plaintiff's assertion that DLA did not inform it

that the assignment was considered invalid is not relevant to an estoppel argument. Timely notice that DLA considered the assignment invalid could not have affected plaintiff's actions with respect to payments received previous to DLA's discovery of the assignment's invalidity. Because timely notice could not have changed plaintiff's actions, lack of notice cannot be a basis for an estoppel argument.

■ Plaintiff has also failed to establish a basis for its assertion that full repayment would result in an inequitable windfall to the Government. The record contains insufficient evidence to establish a relationship between the funds forwarded to Trident and the payments allegedly recouped by defendant through St. Bernice's partial performance.[12] Based upon the record before this court, the court finds that there is nothing inherently inequitable in ordering plaintiff to restore funds the Government has erroneously paid.

Because the court has found that the payments were made erroneously under the Act, no further consideration of the parties respective arguments concerning defendant's right to recover under a breach of contract theory is needed.[13]

■ Plaintiff's final argument is that summary judgment for defendant is

---

**11.** As previously noted in footnote 5, approximately 90 percent of the payments were sent to Trident who supplied some raw materials to St. Bernice for performance of Contract No. DLA–100–80–C–347. However, evidence indicates that St. Bernice was indebted to Trident from past business dealings. Trident is not a party to this action and the evidence concerning Trident's disposition of the funds it received is inconclusive. For example, it is unclear exactly what portion, if any, of the funds it received from plaintiff were applied to reduce St. Bernice's preexisting debt and what portion covered the cost of the raw materials supplied to St. Bernice.

**12.** The evidence clearly shows that defendant paid a total of approximately $1,400,000 in progress payments. However, it only received delivery of 27,831 units out of a total requirement of 84,000 units under the contract. The delivered units amounted in value to approximately $730,000 less than the amount DLA paid out in progress and end payments under the contract. DLA also incurred additional costs of approximately $90,000 for reprocurement costs and $199,000 for government furnished materi-

als which were never recouped. From this brief analyses it is apparent that the Government has suffered a sizeable loss on its terminated contract with St. Bernice which will not be fully offset by a recovery on its counterclaim in this proceeding. Thus, even if the plaintiff had shown, by substantial and credible evidence—which it failed to do—a direct dollar for dollar relationship between the payments it made to Trident and the value of the deliveries under the contract, the dollars simply will not add up to a windfall for the Government by this court's granting of the counterclaim in full.

**13.** Questions of fact, material to the adjudication of defendant's right to recover based on St. Bernice's breach of contract, would preclude resolution of that issue through summary judgment. A trial would be necessary to determine the merits of the parties' respective arguments. However, as previously noted the court's decision in this case is not premised upon defendant's breach of contract claim against St. Bernice or the extent of its losses under that contract. Thus, summary judgment is appropriate under these circumstances.

not appropriate because questions exist concerning facts material to its claim. The first proposed question of material fact concerns the amount of defendant's recovery. Although the amount of recovery on a breach of contract claim is often uncertain, in this case both parties have stipulated that plaintiff received $764,897.76 from DLA. Defendant's recovery is validly based on the fact that its payments to plaintiff were erroneous. The amount of defendant's recovery on its counterclaim, therefore, is not in question. The second proposed question of material fact is whether plaintiff intended to hide the true nature of the financing arrangement. This court previously determined that the true nature of the financing arrangement was effectively hidden. That finding was not dependant on plaintiff's lack of good faith or improper intent. Therefore, any question concerning plaintiff's good faith or intent is not material to this decision and need not be considered.

## CONCLUSION

The basic purpose of the Act is to afford protection to the Government from having to investigate and determine the merits of conflicting claims of multiple parties to payments due under government contracts. In this case, plaintiff has failed to show that it obtained a valid assignment of the right to receive DLA's progress payments because its actions did not meet the requirements of the Act and the Government's actions did not constitute a waiver of those requirements or give rise to an estoppel.

It is undisputed that plaintiff received a total of $764,897.76 in progress payments. This court has found that those payments were erroneous. Although defendant may have been negligent in making them, they were not authorized under the Act. In fact, as soon as DLA discovered its error, it promptly terminated the next series of payments to plaintiff.

Plaintiff advanced none of its funds for performance of the contract. In fact, it took no financial risk in the transaction whatever. Its sole interest, which was not disclosed to DLA, was to receive payments upon St. Bernice's pre-existing debt for as long as St. Bernice was able to survive and keep the progress payments flowing. In short, none of the progress payments plaintiff received were to recompense it for funds it had advanced toward St. Bernice's performance of the contract. On the other hand, defendant has suffered such significant losses under the contract that it will not be made whole much less receive any windfall, if full recoupment is ordered of all payments. Given these facts, the court concludes that there is nothing inequitable in ordering repayment of all of the funds received by plaintiff.

This court has no clearly defined obligation to adjudicate all possible conflicting claims which may arise such as those involving Trident, St. Bernice and perhaps others. For the court to attempt to do so would appear to conflict with the basic purposes of the Act. Therefore, resolution of other conflicting claims must occur, if at all, in another forum. Under the facts in this case, when those facts are viewed in a light most favorable to plaintiff, this court is persuaded that it must grant defendant's counterclaim. Accordingly, defendant's motion for summary judgment is granted and plaintiff's cross-motion for summary judgment is denied.

The clerk shall enter judgment for defendant in the amount of $764,897.76. No Costs.