**UNITED STATES of America, Plaintiff,**

v.

**SINTON DAIRY FOODS COMPANY, INC., Defendant.**

**Civ. A. No. 90–B–1894.**

United States District Court, D. Colorado.

Oct. 18, 1991.

Karen Lynne Baker, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., William G. Pharo, Asst. U.S. Atty., Denver, Colo., for plaintiff.

Robert E. Benson, Lynn Bolinske, Holland & Hart, Denver, Colo., Wayne H. Hoecker, James C. Thomas, III, Gage & Tucker, Kansas City, Mo., Raymond A. Graham, Robinson, Waters, O'Dorisio & Rapson, P.C., Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Plaintiff United States of America (the government) brings this action to recover $592,838 in tax refunds. The refund checks were payable to Sinton Food Companies, Inc. (Old Sinton), but were cashed by defendant Sinton Dairy Foods Company, Inc. (New Sinton). A hearing on the parties' cross motions for summary judgment was held September 20, 1991. For the reasons stated below, the government's motion is granted and New Sinton's motion is denied.

### I.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### II.

The facts, with all disputes resolved in New Sinton's favor, are as follows. On May 15, 1987, New Sinton acquired by assignment all of Old Sinton's assets except for some stock that is not relevant to this case. The potential tax refunds involved here were included in this assignment. New Sinton thereafter changed its name to Sintcorp.

On July 28, 1988, New Sinton/Sintcorp filed three Forms 1139 (Corporate Application for Tentative Refund) with the Internal Revenue Service (IRS) for the taxable years ending October 31, 1981, 1982, 1984, and 1985, in the amounts of $98,436, $130,-831, $199,511, and $164,060, respectively. Virtually all of these refund claims were generated by a carryback of the net operating losses of Old Sinton, which accrued prior to May 15, 1987. The taxpayer identified on the Forms 1139 was "Sinton Food Companies, Inc." (Old Sinton). Each form was signed by Charles K. New, Sintcorp's president.

In October 1988, the IRS issued refund checks for $98,436, $130,831, $199,511, and $164,060, payable to Old Sinton. On November 7, 1988, New Sinton/Sintcorp endorsed these four checks, presented them for payment, and was credited with the full amount of the checks.

### III.

The Anti–Assignment Act (the Act), 31 U.S.C. § 3727(b), provides that an assignment of a claim, or of an interest in any claim, against the United States Government "may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued...."

The Act has a number of purposes, including "to prevent *possible* multiple payment of claims, to make unnecessary the investigation of alleged assignments, and to enable the Government to deal only with the original claimant." *United States v. Aetna Casualty & Sur. Co.*, 338 U.S. 366, 373, 70 S.Ct. 207, 211, 94 L.Ed. 171 (1949)

(emphasis added). "In the absence of such a rule, the Government would be in danger of becoming embroiled in conflicting claims, with delay and embarrassment and the chance of multiple liability." *Martin v. National Sur. Co.*, 300 U.S. 588, 594, 57 S.Ct. 531, 534, 81 L.Ed. 822 (1937).

New Sinton concedes that the assignment of the potential refunds does not comply with the Act. Because the assignment does not comply with the Act, it is voidable at the government's discretion. *Tuftco Corp. v. United States*, 614 F.2d 740, 745, 222 Ct.Cl. 277 (1980). Here, the government exercised its discretion to void the assignment. Accordingly, the assignment of the potential tax refunds is not valid as against the United States. *See In re R & L Refunds, Inc.*, 96 B.R. 105 (Bankr. W.D.Ken.1988) (invalidating assignment of anticipated tax refunds).

■ Stripped of the assignment, the case is uncomplicated. The government sent the refund checks payable to Old Sinton. The government retained a property interest in the checks until they were cashed by Old Sinton. *United States v. Wyatt*, 737 F.2d 1499 (9th Cir.1984); *United States v. Forcellati*, 610 F.2d 25 (1st Cir.1979), *cert. denied*, 445 U.S. 944, 100 S.Ct. 1342, 63 L.Ed.2d 778 (1980). When New Sinton converted these checks to its own account, it improperly interfered with this property interest. Accordingly, the government is entitled to recover the amount of the refunds under either 26 U.S.C. § 7405, *see United States v. Michaels*, 840 F.2d 901 (11th Cir. 1988), or common law. *American Nat'l Bank and Trust Co. v. United States*, 23 Cl.Ct. 542, 547 (1991); *United States v. Michaelson*, 58 F.Supp. 796, 802 (D.Minn. 1945).

■ New Sinton argues, however, that the Act does not apply, contending that the government has no potential liability to Old Sinton in connection with the refunds. The government asserts that under the circumstances here there exists the possibility of a multiple recovery against it.

Because Old Sinton is not a party to this suit, I cannot decide this issue. *See St. Louis Baptist Temple, Inc. v. FDIC*, 605

F.2d 1169, 1174 (10th Cir.1979) (issue preclusion does not apply unless prior suit involved same parties or their privies); *cf.* Fed.R.Civ.P. 19(a). However, as demonstrated by the government's briefs, Old Sinton could press a nonfrivolous claim that the government still owes it the refunds. This is a possible claim that the Act allows the government to avoid.

■ Citing *Martin v. National Surety Co.*, 300 U.S. 588, 57 S.Ct. 531, 81 L.Ed. 822 (1937), New Sinton next argues that government may not assert the Act because the ownership of the refunds is solely a dispute between private parties. I disagree.

First, *Martin* was a dispute between private parties. This case, however, directly involves the government as a party plaintiff. Moreover, as stated in *Martin*, "[a] transfer of a fund after payment is perfected is of no concern to any one except the parties to the transaction." *Id.* at 595, 57 S.Ct. at 534. Here, payment was never perfected because New Sinton, not Old Sinton, endorsed the checks. Accordingly, as discussed above, the government is "in danger of becoming embroiled in conflicting claims," *Id.* at 594, 57 S.Ct. at 534, and the Act's protections apply.

■ New Sinton's reliance on *McKnight v. United States*, 98 U.S. 179, 25 L.Ed. 115 (1879) is without merit. In that case, the government owed money to a government contractor. The government paid the money to the contractor's assignees. Although the assignees had a valid claim against the contractor, the assignment was contrary to an early version of the Anti–Assignment Act and, therefore, "void." *Id.* at 186–87 (citing *Spofford v. Kirk* 97 U.S. 484, 24 L.Ed. 1032 (1878)). However, the court held that because the government knew that it was paying the money to assignees, and because there was no concealment by the assignees, the government could not recover the money. *Id.*

This case is distinguishable in that the government did not pay the assignee, but the assignor. Because the government in *McKnight* knew all the relevant facts and

still chose to pay the assignees, it had an adequate opportunity to protect its interests. Here, the government did not issue checks to the assignee, New Sinton. Consequently, the government's opportunity to protect its interests first arises in this action. *McKnight* is not controlling. *Cf. American Nat'l Bank*, 23 Cl.Ct. at 547–48.

New Sinton's argument that once the government pays out money, it may not sue to recover is also without merit. *American Nat'l Bank*, 23 Cl.Ct. 542 (allowing government to recover money paid out to assignee).

Accordingly, I conclude that the government may reclaim the refund money paid to Old Sinton but received by New Sinton. The government seeks to apply part of the award in this case to an alleged tax deficiency owed by Old Sinton's parent corporation. This relief is not requested in the government's amended complaint. The government's ability to apply the award to the alleged deficiency is, therefore, not a proper issue in this case, and I will not address it.

Finally, New Sinton moves for a continuance under Rule 56(f), arguing that it needs discovery on an issue raised by the government. Because that issue was not material to my resolution of the cross motions for summary judgment, the motion is denied.

Accordingly, it is ORDERED that:

(1) the government's motion for summary judgment is GRANTED;

(2) New Sinton's motion for summary judgment is DENIED;

(3) New Sinton's motion to strike, or in the alternative, motion for continuance is DENIED;

(4) final judgment shall enter for the government and against New Sinton for $592,838.00 plus pre- and post-judgment interest at the legal rate, the parties to bear their own costs.