**FANSTEEL METALLURGICAL CORPORATION**

**v.**

**UNITED STATES.**

No. 170–58.

United States Court of Claims.
April 8, 1959.

Frank Greenberg, Chicago, Ill., for plaintiff. Marx Leva, Washington, D. C., Robert H. Ford, and Charles E. Zeitlin, Chicago, Ill., were on the briefs.

Laurence H. Axman, Washington, D. C., with whom was Asst. Atty. Gen. George Cochran Doub, for defendant.

LARAMORE, Judge.

In a suit by plaintiff Fansteel Metallurgical Corporation under a supply contract, the Government has counterclaimed for alleged overpayments to plaintiff. Plaintiff has filed motion for summary judgment dismissing the counterclaim on the ground that plaintiff's affirmative defenses to the counterclaim cannot be denied and are dispositive of defendant's counterclaim. The affirmative defenses are: (1) The defendant is precluded, as a matter of law, from recovering on its counterclaim because of the provisions of section 49 of the Uniform Sales Act, Ill. Rev.Stat. ch. 121½, § 49, (1957); (2) the defendant is estopped from asserting that the contract imposed upon plaintiff the obligation which is alleged to be breached; (3) that there has been an effective account stated between the parties with respect to each sale.

The facts as disclosed by the pleadings, exhibits and affidavits which are necessary to this opinion are these:

As of April 25, 1952, the plaintiff entered into a contract of sale with the defendant, whereby plaintiff undertook to expand its facilities for the production of crude columbium oxide and potassium tantalum fluoride. In return for plaintiff's expansion program, which was at its own expense, defendant obligated itself to purchase from plaintiff a limited quantity of the crude columbium oxide and potassium tantalum fluoride which might be produced by plaintiff. The contract provided a complex price formula, which the Government alleges was violated by plaintiff and resulted in overcharges by a plaintiff for which the Government counterclaims in this action.

Plaintiff brings this action to recover $197,146.88 with interest arising under the contract. $94,325.97 thereof is alleged to be due because of nonpayment for materials shipped to the Government between August 27, 1957, and October 25, 1957. $102,820.91 is alleged to be due plaintiff for material tendered and invoiced but not shipped between November 22, 1957, and March 24, 1958. Defendant admits the receipt of the material and nonpayment of the invoices, but asserts overpayments in excess of the amounts for which suit is brought because of an alleged breach of the contract by plaintiff in prior shipments, thereby

making it unnecessary for defendant to accept or pay for the material.

Plaintiff, for the purpose of this motion, concedes "that in each of the quarters of the three years 1954–1956, it breached its promise to purchase in-range ores and that as a consequence of such breach, the price paid by the defendant for material purchased by it in the related quarters of the period July 1, 1954—June 30, 1957, was higher than it would otherwise have been." Plaintiff further admits, for the purpose of its motion, that the defendant suffered damage in consequence of its (plaintiff's) breach.

Thus the situation is that plaintiff admits a breach and damage to the defendant but argues that defendant cannot possibly recover for reasons set forth in its affirmative defenses, and therefore the counterclaim should be dismissed.

Section 49 of the Uniform Sales Act, upon which plaintiff relies, provides as follows:

"In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But, if, after acceptance of the goods, the buyer fail to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know of such breach, the seller shall not be liable therefor."

Plaintiff then argues that no timely notice was given by defendant of a breach of the contract and the defendant may not now recover or counterclaim for damages on account thereof.

■■ Many cases are cited by plaintiff in support of this contention, and while we do not dispute the correctness of them, it is at least interesting to note that in all the cited cases a breach of warranty was involved. No cases are cited which specifically hold that the Uniform Sales Act bars recovery by the Government for overpayments made by it.

It seems clear that no officer or agent of the Government is clothed with authority to disburse money belonging in the public treasury without authority so to do. Heidt v. United States, 5 Cir., 56 F.2d 559, 560; Royal Indemnity Co. v. United States, 313 U.S. 289, 61 S.Ct. 995, 85 L.Ed. 1361. Nor can an officer or agent act beyond the limits of his authority. Wisconsin Central Railroad Co. v. United States, 164 U.S. 190, 17 S.Ct. 45, 41 L.Ed. 399.

■ In the instant case the overpayment is admitted and no act of Congress or amendment of the contract exists under which plaintiff could retain the overpayment. The law is well settled that a contracting officer can change the terms of a contract to the benefit of the Government but is not given authority to make a change which would adversely affect the Government. United States v. American Sales Corporation, D.C., 27 F.2d 389. As a matter of fact, when a payment is erroneously or illegally made it is in direct violation of article IV, section 3, clause 2, of the Constitution. Royal Indemnity Co. v. United States, supra. Under these circumstances it is not only lawful but the duty of the Government to sue for a refund thereof, and no statute is necessary to authorize the United States to sue in such a case. United States v. Wurts, 303 U.S. 414, 58 S.Ct. 637, 82 L.Ed. 932. Since authority is given to sue for recovery of money erroneously paid, and the fact of overpayment necessarily must come from construction of the contract in suit, it is the Federal law which applies and not the states' Uniform Sales Act, supra. See Armstrong v. United States, Ct.Cl., 169 F.Supp. 259. Therefore we believe, since it is admitted that the Government overpaid, a fundamental right to sue for recovery exists.

■■ In other words, plaintiff now freely admits it overcharged the Government but says nothing can be done about it because the Government waited too long before asserting a claim therefor.

Under this situation we think as a further reason for denying plaintiff's motion, that application of the Uniform Sales Act would be in the nature of a statute of limitations barring the Government's right to seek recovery. It is well settled that the United States is not bound by state statutes of limitations. United States v. Summerlin, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283.

For the above reasons we hold that section 49 of the Uniform Sales Act has no application here.

Plaintiff's next affirmative defense is that the defendant is estopped from asserting the alleged breach of contract and overpayment. Plaintiff argues that each time a shipment was made an invoice was tendered, the material accepted, and payment made. Under these circumstances plaintiff argues that if a breach occurred it was each time shipment was made, and since the Government accepted and paid, it acquiesced and is equitably estopped from asserting a claim for overpayment.

We see no merit in this contention. The Supreme Court has many times held that estoppel may not be invoked against the Government in a situation such as presented here. Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10; United States v. Stewart, 311 U.S. 60, 61 S.Ct. 102, 85 L.Ed. 40; United States v. City and County of San Francisco, 310 U.S. 16, 60 S.Ct. 749, 84 L.Ed. 1050; Wilber National Bank of Oneoneta, N. Y. v. United States, 294 U.S. 120, 55 S.Ct. 362, 79 L.Ed. 798. This is especially so since, as stated earlier, where money is allegedly erroneously paid it is the duty of the Government to sue for its return. Further, long continuance of illegal or erroneous overpayments does not prevent their recovery even when contractual relations are involved. Nor does it matter how much time elapsed before the error of overpayment was discovered or how long the act to recover it was deferred. Heidt v. United States, supra.

In respect to the above, plaintiff argues that the Government knew or should have known of the overpayment. However, under the circumstances of this case, the claim of the Government was not known until the final audit in September 1957. Even if the facts were known by the contracting officer, this knowledge could not have been attributed to the audit division, office of the comptroller, which office conducted the final audit revealing the alleged overpayments. It has been held that one branch of the Government cannot be attributed with knowledge which reposes in files of other department units. McDaniel v. United States, 5 Cir., 196 F.2d 291; United States v. Kiefer, 97 U.S.App.D.C. 101, 228 F.2d 448.

Equitable estoppel stands for the precepts of common honesty, clear fairness, and good conscience. United States v. Certain Parcels of Land, D.C., 131 F.Supp. 65. Stated in another way, estoppel "is founded in natural justice" and "is a principle of good morals as well as law." Gregg v. Von Phul, 1 Wall. 274, 281, 17 L.Ed. 536.

Applying the above principle to this case leads us to the conclusion that fairness, good conscience, and natural justice requires the holding that if erroneous payments were made to plaintiff, the Government should be permitted its day in court in an endeavor to prove the same and recover.

This brings us to plaintiff's third affirmative defense wherein it alleges an account stated between the parties.

The short answer to this contention is that no agreement was reached that the amounts charged and paid under the invoices were correct. It was not until the audit of September 1957 that a determination of the correctness of the charge was made, and at that time the Government immediately charged the plaintiff with receiving an overpayment. Therefore, the defense of an account stated or an account settled is

272

not shown by the facts before the court. American Steam Conveyor Corp. v. United States, 10 F.Supp. 571, 81 Ct.Cl. 151, and cases cited therein.

For the foregoing reasons we believe the affirmative defenses alleged by plaintiff are not dispositive of defendant's counterclaim. Accordingly, plaintiff's motion for summary judgment dismissing defendant's counterclaim is denied.

It is so ordered.

JONES, Chief Judge, and MADDEN and WHITAKER, Judges, concur.