The AETNA CASUALTY & SURETY COMPANY

v.

The UNITED STATES.

No. 67–74.

United States Court of Claims.

Dec. 17, 1975.

Philip M. Cronin, Boston, Mass., attorney of record, for plaintiff.

Leslie H. Wiesenfelder, Washington, D. C., with whom was Asst. Atty. Gen. Rex E. Lee, for defendant.

Before COWEN, Chief Judge, LARAMORE, Senior Judge, and BENNETT, Judge.

## ON PLAINTIFF'S MOTION AND DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT

COWEN, Chief Judge:

This case, before the court on the parties' cross-motions for summary judgment, involves a dispute between a Mil-

ler Act, 40 U.S.C. §§ 270a–270d, payment bond surety and the Government over the surety's right to unpaid contract balances presently being held by the Government. The surety, Aetna Casualty & Surety Company (Aetna), claims that it is entitled to the entire amount of such balances ($77,094.61). Defendant, however, maintains that it has the right to set off against the contract balances certain obligations owed to the United States by the surety's principal, and that these offsets have a clear and absolute priority over any claim that the surety may have. For the reasons set forth below, we find that the Government is entitled to offsets in an amount that exceeds the unpaid contract funds. Accordingly, we grant defendant's cross-motion for summary judgment and dismiss plaintiff's petition.

The facts essential to a decision are not in dispute. In 1968 and 1969, the United States Postal Service (USPS), acting through its predecessor, the United States Post Office Department (POD),[1] entered into ten contracts with the J. C. Corrigan Company (Corrigan) for the construction and installation of mail handling systems at various post offices. Plaintiff, Aetna, was the Miller Act payment and performance bond surety on each of the ten contracts.

In May 1971, upon learning that Corrigan had failed to meet its obligations to subcontractors and materialmen on those contracts, Aetna notified the POD of Corrigan's default and advised the POD that, by virtue of an assignment of the contract funds and Aetna's equitable rights as surety, Aetna was entitled to any contract funds remaining in the hands of the Government. As payment bond surety, Aetna has paid debts owed by Corrigan to the subcontractors and

materialmen on eight of the contracts in the amount of $234,704.36.[2] The unexpended contract funds presently being held by USPS total $77,094.61. Aetna claims, under the doctrine of equitable subrogation, that it is entitled to these funds to reduce the losses it incurred in satisfying Corrigan's obligations to the subcontractors and materialmen. Defendant, however, maintains that under the rule laid down in *United States v. Munsey Trust Co.*, 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947), it has the right to set off against the contract balances certain obligations owed to it by Corrigan.

The primary offsets asserted by the Government arise out of a contract (No. 70–1–00698) that the POD awarded Corrigan on December 30, 1969, for the construction and installation of a mail handling system in the Milwaukee, Wisconsin, post office. Although Corrigan was required to file payment and performance bonds within 10 days from the award of that contract, none were ever filed. The POD, however, did not discover Corrigan's failure to file the bonds until April 1971. Thereafter, the POD determined that Corrigan's failure was willful and on May 10, 1971, terminated the contract.

A portion of the work on the Milwaukee contract was subcontracted by Corrigan to the Kennedy Electric Company (Kennedy). On March 3, 1972, Kennedy brought suit against the USPS in the United States District Court for the District of Colorado to recover amounts due for work and materials provided Corrigan.[3] On December 7, 1973, the District Court entered judgment against USPS. *See Kennedy Elec. Co. v. United States Postal Service*, 367 F.Supp. 828 (D.Colo. 1973). That judgment, which was af-

---

**1.** USPS succeeded to the interest of the POD, under the terms of the Postal Reorganization Act, 84 Stat. 719 (1970), on July 1, 1971. All assets and liabilities of the POD were transferred to the USPS. *See* 39 U.S.C. § 2002.

**2.** Aetna incurred no losses as a result of its performance bond obligations.

**3.** By this time, Corrigan was in bankruptcy. Since there was no surety from whom Kennedy could seek recovery, Kennedy was forced to proceed against USPS.

firmed by the United States Court of Appeals for the Tenth Circuit, is now final. *See Kennedy Elec. Co. v. United States Postal Service,* 508 F.2d 954 (10th Cir. 1974). The Government has paid $77,415.10 in full satisfaction of the judgment.

As its first offset, defendant claims that it has the right to offset the *Kennedy Electric* judgment against the unpaid contract balances. Plaintiff, on the other hand, contends that the Government's failure to require Corrigan to file payment and performance bonds rendered the Milwaukee contract illegal and, therefore, that any costs incurred by the Government thereunder cannot be claimed as an offset.

■ We reject plaintiff's contention for two reasons. In the first place, we are convinced that the Government's failure to obtain the required bond did not render the contract illegal. The better view, and the one which we adopt, is that upon the Government's acceptance of Corrigan's bid, a valid contract came into existence and that by failing to furnish the bonds within the required period of time, Corrigan breached an existing and enforceable contract. *United States v. Pennington,* 228 F.Supp. 374, 375 (E.D. La.1964); *see United States v. Purcell Envelope Co.,* 249 U.S. 313, 319–20, 39 S.Ct. 300, 63 L.Ed. 620 (1919).

■ Secondly, even assuming the contract was illegal, we are of the opinion that defendant nevertheless is entitled to the offset which it now claims. The practical effect of the *Kennedy Electric* judgment was to require the Government to utilize its own funds to satisfy Corrigan's obligation to its subcontractor, Kennedy. As a result of its having paid Corrigan's obligation, the Government clearly has a claim against Corrigan that must be satisfied. Since Corrigan is now bankrupt, the only source of funds available from which defendant is able to satisfy this obligation is the contract funds it now holds.

■ It is a well-settled principle that the Government has inherent authority to recover sums illegally or erroneously paid, and that it cannot be estopped from doing so by the mistakes of its officers or agents. *See United States v. Wurts,* 303 U.S. 414, 415, 58 S.Ct. 637, 82 L.Ed. 932 (1938); *American Fidelity Fire Ins. Co. v. United States,* 513 F.2d 1375, 1381, 206 Ct.Cl. 570, 580 (1975); *Fansteel Metallurgical Corp. v. United States,* 172 F.Supp. 268, 270, 145 Ct.Cl. 496, 500 (1959). As this court recognized in *Fansteel Metallurgical Corp. v. United States,* 172 F.Supp. at 270, 145 Ct.Cl. at 500:

> [W]hen a payment is erroneously or illegally made it is in direct violation of article IV, section 3, clause 2, of the Constitution. [case citation.] Under these circumstances it is not only lawful but the duty of the Government to sue for a refund thereof * * *.

Defendant's contention that, under the circumstances of this case, it is entitled to recover the losses that it has incurred in satisfying the *Kennedy Electric* judgment from the funds earned by Corrigan on its other contracts with the Government, is clearly consistent with these cogently expressed mandates.

■ Plaintiff appears to argue that, since the costs incurred by defendant in satisfying the *Kennedy Electric* judgment result from defendant's failure to comply with the Miller Act, equity should not permit defendant to recoup its losses by setting them off against the legitimate claims of a surety. Plaintiff, however, derives no legal or equitable rights from any action taken or not taken in connection with the unbonded Milwaukee contract. Aetna had no relationship to, nor participation in, that contract. The Miller Act requirement that the contractor file a payment bond is intended to protect subcontractors and materialmen on the particular contract for which the bond is required. *See Kennedy Elec. Co. v. United States Postal Service,* 508 F.2d 954, 957 (10th Cir. 1974); *United States v. Aetna Cas. & Sur. Co.,* 480 F.2d 1095, 1100 (8th Cir.

1973); *J. J. Henry Co. v. United States*, 411 F.2d 1246, 1252–53 n. 7, 188 Ct.Cl. 39, 51 n. 7 (1969). Plaintiff was not a surety on the Milwaukee contract and has no right of subrogation or other equitable right arising out of the rights of those who furnished labor and material for the performance of that contract. Thus, for the reasons set forth above, we conclude that the defendant is entitled to its first offset.[4]

As a second offset, defendant claims that it has the right to withhold $58,691 to cover Corrigan's liability to defendant for the excess costs of reprocuring the Milwaukee contract.[5] Plaintiff apparently relies again on its illegality argument to defeat defendant's claim. However, as indicated above, defendant has enforceable rights against Corrigan under the Milwaukee contract. Accordingly, defendant is entitled to an offset representing the excess costs of reprocuring the Milwaukee contract. *See United States v. Pennington*, 228 F.Supp. 374, 375 (E.D.La.1964); *Adelhardt Costr. Co. v. United States*, 107 F.Supp. 845, 846, 123 Ct.Cl. 456, 459–60 (1952).

Having determined that defendant is entitled to offsets in an amount that exceeds the contract funds remaining in defendant's hands, we conclude that plaintiff is not entitle to recovery. Accordingly, it is ordered that defendant's cross-motion for summary judgment is granted; plaintiff's motion for summary judgment is denied, and plaintiff's petition is dismissed.

---

4. Defendant claims that it is entitled to offset the full amount of the *Kennedy Electric* judgment. There is some question, however, as to whether defendant is entitled to offset that entire amount or whether that amount must be reduced by any funds from the Milwaukee contract remaining in defendant's hands. The District Court opinion in *Kennedy Electric* indicates that $35,739.47 remains in defendant's hands. *See* 367 F.Supp. at 832. However, since plaintiff has only contested defendant's right to the offset, and not the amount thereof,

we find on the record before us that the Government is entitled to offset the entire amount. Even if we were to take into account the $35,739.47, and reduce defendant's offset accordingly, the reduction would not be enough to affect the overall result which we reach.

5. The amount of this offset is established by the contracting officer's final decision, dated January 14, 1975. The decision was not appealed.