**AMTEC CORPORATION, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 02–1396C.

United States Court of Federal Claims.

Filed Under Seal Nov. 30, 2005 [1].

Reissued: Dec. 12, 2005.

1. This opinion was issued under seal on November 30, 2005. The Court invited the parties to submit proposed redactions by December 12, 2005. No redactions having been received, the Court publishes this opinion *in toto*.

Howell Roger Riggs, Huntsville, Alabama, for Plaintiff.

Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Kathryn A. Bleeker, Assistant Director, John H. Williamson, U.S. Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., for Defendant. Samuel W. Morris, Department of the Army, Army Legal Services Agency, General Litigation Branch, Arlington, Virginia, and Michael Lonsberry, U.S. Army Aviation and Missile Command, AMCOM Legal Office, Adversary Proceedings Division, Redstone Arsenal, Alabama, Of Counsel, for Defendant.

## ORDER AND OPINION GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WILLIAMS, Judge.

Plaintiff seeks additional fixed fee under a series of cost-plus-fixed-fee contracts for testing services. At issue is whether fixed fee is payable on additional labor hours which the Government could have acquired by exercising options.[2] Plaintiff seeks $1,307,047.80 representing fixed fee on the maximum manhours which could have been exercised under the options. Plaintiff contends that once an option for *any* additional manhours was exercised, it was entitled to a fixed fee on the maximum number of man-

hours which could have been exercised under that option.[3] In contrast, Defendant contends that Plaintiff was only entitled to a fixed fee for labor hours actually exercised under a given option.[4]

In the alternative, Plaintiff contends that a course of dealing between the parties established Plaintiff's entitlement to fixed fee on the maximum labor hours capable of being acquired under exercised options, because the Government had, on a few occasions, paid Plaintiff a fixed fee based upon the maximum manhours which could have been exercised under a given option.[5] The Government admits that it paid the maximum fee under certain contracts but claims it did so in error, and seeks to recoup the overpaid fixed fee.[6] This matter comes before the Court on the parties' cross-motions for summary judgment.

This dispute involves a narrow issue of contract interpretation. Because the clear language of the contracts cannot reasonably be construed as providing for fixed fee on manhours which were not exercised under the options, Plaintiff cannot recover. Nor does the Government's mistaken payment of maximum fee under a few contracts entitle Plaintiff to recover such maximum fee under all contracts at issue. In contrast, the Government has demonstrated its entitlement to

---

**2.** Specifically, Plaintiff claims the following amounts under each contract: Contract DAAH01–91–C–R312 (R312), $111,161.00; Contract DAAH01–92–C–R398 (R398), $398,639.00; Contract DAAH01–92–C–R394 (R394), $229,099.37; Contract DAAH01–95–C–R015 (R015), $262,163.50; Contract DAAH01–96–C–R049 (R049), $73,273.12; and Contract DAAH01–97–C–R234 (R234), $232,711.81. Plaintiff's First Amended Complaint ¶ 16.

**3.** Plaintiff seeks fees only under options where some labor hours were exercised. *See* Pl.'s Mot. at 4.

**4.** The Government admits that Amtec is entitled to payment of fee for manhours the Government exercised, even if Amtec did not work those hours. *See* Def.'s Repl. at 16 ("[T]he Government does not contest that for the contracts at issue, Amtec is entitled to be paid fixed fee per hour for all manhours exercised by the Government, even if Amtec's employees did not actually perform all manhours specified as the level of

effort in a modification exercising an option increment.").

**5.** The options permitted the Government to exercise any number of manhours within a specified range. For example, in Option I under Contract 856, the Government could have exercised anywhere from 1 to 154,800 manhours. Plaintiff is claiming entitlement to fee on 154,800 manhours even though less manhours were actually exercised.

**6.** Defendant seeks a set-off against Plaintiff pursuant to 28 U.S.C. §§ 1503 and 2508. Specifically, Defendant claims it is owed the following amounts under each contract: Contract DAAH01–89–C–0856 (0856), $1,786.00; Contract DAAH01–89–C–0860 (0860), $125,318.63; and Contract DAAH01–95–C–R002 (002), $8,506.00, for a total of $135,611.00. Def.'s Answer to Pl.'s *First Amended Complaint* ¶¶ 23–25. Under Contract 002, the Government claims overpayment of the fixed fee for the basic contract—not the options.

erroneous overpayments representing fixed fee on unexercised manhours. Accordingly, Plaintiff's motion for summary judgment is denied, and Defendant's cross-motion for summary judgment is granted in part.[7]

## *Factual Background* [8]

Plaintiff, Amtec Corporation (Amtec), was awarded a series of contracts to provide manhours of testing services for the United States Army Aviation and Missile Command (AMCOM) at Redstone Arsenal in Huntsville, Alabama. The contracts were all cost-plus-fixed-fee, level of effort contracts.[9]

## *Contractual Provisions Governing Fixed Fee Payable Under Options*

Each contract contained a series of options for additional manhours exercisable by the Government during a given time frame at a specified hourly labor rate and hourly fixed fee. The options also contained the total estimated labor cost, derived by multiplying the maximum manhours exercisable in the option by the hourly labor rate.

Section B–1 of the contracts required Defendant to reimburse Plaintiff its actual costs for manhours of labor, as well as for material and travel expenses and to pay a fixed fee on labor only. Section B–1 provided:

> Fixed fee on labor shall be paid in installments at the time of each payment on account of allowable cost. The amount of each installment shall bear the same proportion to the total amount of the fixed fee as the payment on account of the allowable labor cost bears to the total estimated labor cost for the performance of the contract or performance of an exercised option.

Pl.'s App. at 112; Def.'s App. at 35.[10]

Section B–2 of the contracts provided a series of options for additional manhours that the Defendant could exercise unilaterally, stating:

a. Option I—Range: 1–154,800 manhours of engineering, technical and support labor, materials and travel, which the Government may exercise in accordance with the provision "Exercise of Options" in Section H hereof. The estimated labor cost for [Option I] and fixed fee are as follows:

| Option I—Total | Estimated Labor Cost/per hour | Fixed Fee/per hour |
|---|---|---|
| (154,800 manhours) | $2,172,019/$14.03 | $170,206/$1.10 |

For purposes of pricing the exercise of manhour increments of Option I, a composite labor rate of 15.13 (inclusive of fixed fee) shall be used.

b. Option II—Range: 1–157,000 manhours of engineering, technical, and support labor, materials and travel, which the Government may exercise in accordance with the provision "Exercise of Options" in Section H hereof. The estimated labor cost for Option II and fixed fee are as follows:

For purposes of pricing the exercise of manhour increments of Option I, a composite labor rate of $14.91 (inclusive of fixed fee) shall be used.

---

7. The Court denies Plaintiff any recovery and grants Defendant's cross-motion for summary judgment as to liability relating to fixed fee on options. The Court lacks an adequate record to determine the Government's counterclaim relating to Contract 002 and quantum at this juncture.

8. This background is derived from the appendices filed in support of the cross-motions for summary judgment.

9. The parties agree that the relevant terms of all the contracts at issue are substantively identical. *See* Def.'s Mot. at 7; Pl.'s Mot. at 1–2. For the sake of simplicity, the parties have designated Contract 856 as the representative contract, and this opinion cites the provisions of that contract.

10. In accordance with the parties' representation, the clauses quoted herein are from Contract 856.

| Option II—Total | Estimated Labor Cost/per hour | Fixed Fee/per hour |
|---|---|---|
| (157,000 manhours) | $2,171,285/$13.85 | $170,097/$1.08 |

For purposes of pricing the exercise of manhour increments of Option II, a composit[e] rate of $14.91 (inclusive of fixed fee) shall be used.

c. Option III—Range: 1–148,038 manhours of engineering, technical, and support labor, materials and travel, which the Government may exercise in accordance with the provision "Exercise of Options" in Section H hereof. The estimated labor cost for Option III and fixed fee are as follows:

| Option III—Total | Estimated Labor Cost/per hour | Fixed Fee/per hour |
|---|---|---|
| (148,038 manhours) | $2,012,552/$13.60 | $157,609/$1.06 |

For purposes of pricing the exercise of manhour increments of Option III, a composite labor rate of $14.66 (inclusive of fixed fee) shall be used.

Pl.'s App. at 112–13; Def.'s App. at 35–36.

Section B–3 provided an Estimated Cost Schedule for the basic contract as follows:

The estimated total cost of this contract (including labor, material and travel) is $245,254.00. Fixed Fee, applicable to labor cost only, pursuant to B–1a above, is $10,780.00. The estimated cost and fee associated with each option exercised shall be stated in the contract modification in which the option is exercised. [Pricing] of the option quantity shall be as stated in B–2.

Pl.'s App. at 113; Def.'s App. at 36.

Section H–9 of Contract 856 "Exercise of Options" stated:

The Government may increase the services called for herein by exercising one or more of the following options:

a. *Option I*—Option I or increments of one or more hours of Option I may be exercised at any time during the period 01 Sep 1989 through 31 Aug 1990. The Government may exercise increments of Option I one or more times, up to but not exceeding the 154,800 manhour ceiling.

b. *Option II*—Option II or increments of one or more hours of Option II may be exercised at any time during the period 01 Sep 1990 through 31 Aug 1991. The Government may exercise one hour increments of Option II one or more times, up to but not exceeding the 157,000 manhour ceiling.

c. *Option III*—Option III or increments of one or more hours of Option III may be exercised at any time during the period 01 Sep 1991 through 31 Jul 1992. The Government may exercise increments of Option III one or more times, up to but not exceeding the 148,038 manhour ceiling.

Def.'s App. at 46.

### Contract 856

The parties entered into Contract 856 on August 31, 1989, and performance was completed on August 31, 1992. For Contract 856, Plaintiff claimed it was owed the fixed fee for the basic contract plus the fixed fee for maximum manhours for Options I, II, and III ($10,780 + $170,206 + $170,097 + $157,609 = $508,692). With the issuance of Contract Modification P00100 on September 3, 1992, the cumulative amount of fixed fee that had been paid by Defendant under the basic contract and all exercised options was $506,905.58—$1,786 less than Plaintiff had claimed. Pl.'s App. at 63. According to the Government, this amount reflected the fixed fee on a per-hour basis for manhours actually exercised. However, Defendant later paid an additional $1,786 in response to Plaintiff's Voucher 147 dated September 1, 1994. Thus, Plaintiff was paid a total fixed fee of $508,692 under this contract. Pl.'s App. at 63.

In an Audit Report issued more than two years later, on January 6, 1997, the Defense Contract Audit Agency (DCAA) questioned $1,786 of the fixed fee claimed by Plaintiff in excess of the $506,906.00 fee specified in the last modification because Defendant had not exercised the maximum number of man-hours. Def.'s App. at 110A–C. The Audit Report also indicated that when Plaintiff was informed of the audit, it claimed that the contract modifications amended the contract funding and not the contract, and maintained that the contract entitled it to the fixed fee on the maximum manhours for all options under which any manhours were exercised, regardless of manhours actually purchased by Defendant. Def.'s App. at 110C. The Contracting Officer did not have the DCAA audit at the time he signed off on the final voucher claiming the larger fixed fee. Def.'s App. at 24, Deposition of Raymond Lewis Shores (May 20, 2004) (Shores Dep.).

On March 11, 2003, the Contracting Officer issued a set of Contracting Officer's Final Decisions (COFD) that determined the total fixed fee due to Plaintiff on Contract 856 was $506,906.00 and demanded repayment of $1,786. Pl.'s App. at 22.

### Contract 860

The parties entered into Contract 860 on September 14, 1989, and performance was completed on the same day as Contract 856—August 31, 1992. Pl.'s App. at 63. Contract 860 contained a similar schedule of fixed fees for the basic contract and options. The total fixed fee in the schedule for the basic contract plus all options exercised for maximum manhours was $498,304. Pl.'s App. at 123–24.

With the issuance of Contract Modification P00079 on September 23, 1992, the cumulative amount of fee which had been billed by Plaintiff and paid by Defendant was $498,304. Pl.'s App. at 28. By Voucher 139 dated September 1, 1994, Plaintiff billed for a total fixed fee of $498,304, which was subsequently paid. Pl.'s App. at 63. No DCAA audit for this contract is in the Court's record.

In the final decision, the CO determined that the total fixed fee due to Plaintiff on Contract 860 was $372,985.00 and demanded repayment of $125,319. Pl.'s App. at 28.

### Contract 002

Contract 002 was entered into on October 27, 1994, and was completed on December 31, 1994. The parties had agreed in bilateral Contract Modification P00001 dated November 23, 1994, to reduce the fixed fee for the basic portion of the contract from $21,882.00 to $13,374. Def.'s App. at 352.[11] Despite the modification, in the final voucher dated March 29, 1999, Plaintiff claimed it was owed $21,879.79 for the fixed fee on the contract, which Defendant paid. Def.'s App. at 362. The DCAA issued an audit report on October 20, 1999, questioning $8,506 of the fixed fee representing the difference between the $13,374 specified in Modification P00001 and the $21,879.79 requested by Plaintiff in the final voucher. Pl.'s App. at 64. In the COFD, the CO determined that the total fixed fee on contract 002 was $13,374.00 and demanded repayment of $8,506.00. Pl.'s App. at 16–17.

### Contracts R312 and R398

Contract R312 was signed on September 12, 1991, and was completed December 31, 1997. Def.'s App. at 269. Plaintiff claimed a total fixed fee under the contract of $1,220,745.94 by final voucher dated February 15, 2001. Def.'s App. at 268–69; Pl.'s App. at 2. The amount was the sum of the fixed fee for the basic contract, plus the fixed fee for maximum manhours capable of being exercised under all options. Pl.'s App. at 7. Modification P00165 of Contract R312 specified a fixed fee of $1,109,585, representing a per-hour fee for manhours actually exercised by Defendant. Def.'s App. at 267.

On October 15, 2001, the Contracting Officer issued a COFD addressing Contracts R312 and R398. The COFD determined that the fixed fee owed to Plaintiff under Contract R312 was $1,109,584.51,—$111,161.43 less than the amount claimed by Plaintiff. Pl.'s App. at 7.

Contract R398 was signed September 8, 1992 and completed on January 1, 1996. Def.'s App. at 345. Plaintiff claimed a total fixed fee under the contract of $759,256.00 by

---

11. Contract 002 is the only contract in which the fixed fee for the basic contract is at issue.

final voucher dated October 20, 2000. Def.'s App. at 344–45. The amount claimed by Plaintiff was the sum of the fixed fee for the basic contract set forth in Section B–3 plus the fixed fee on maximum manhours capable of being exercised under the options. In Contract Modification P00072, the fixed fee specified was $360,616.71, which had been calculated based on the number of manhours exercised. Def.'s App. at 341. Again, the COFD determined that the fixed fee due under Contract R398 was the amount in the final contract modification—$360,616.71— $398,639.00 lower than the amount demanded by Plaintiff. Pl.'s App. at 10.

### Contracts R394 and R015

On June 26, 2003, the Contracting Officer issued a third set of COFDs addressing contracts R394 and R015. The CO denied Plaintiff's request for payment of the maximum fixed fee where the maximum manhours had not been exercised. Pl.'s App. at 47–62.

Plaintiff appeals all seven final decisions and also demands payment of the total fixed fee for maximum manhours under Contracts 049 and 234, for which no COFD has been issued. Defendant counterclaims and seeks a set-off for erroneous overpayments of fixed fee under Contracts 856, 860 and 002.

### Discussion

### Subject Matter Jurisdiction

Subject matter jurisdiction may be challenged at any time by the parties, by the Court *sua sponte*, and even on appeal. *Booth v. United States*, 990 F.2d 617, 620 (Fed.Cir.1993). In ruling on a motion to dismiss for lack of subject matter jurisdiction, the Court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Cedars–Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573,

1583 (Fed.Cir.1993); *Holland v. United States*, 57 Fed.Cl. 540, 551 (2003). Ultimately, however, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed.Cir.2002).

The Contracts Dispute Act (CDA) vests this Court with "jurisdiction over a breach-of-contract claim against the government if the claimant first submits a written claim to the applicable government contracting officer and then files its complaint with the Court of Federal Claims 'within twelve months' after receiving the contracting officer's decision." 41 U.S.C. § 609(a)(3); *see also Inter–Coastal Xpress, Inc. v. United States*, 296 F.3d 1357, 1362 (Fed.Cir.2002).

Contracts 049 and 234 have not been subject to an audit, and Plaintiff has not yet submitted final vouchers for payment under these contracts. *See* Pl.'s First Amend. Compl. ¶ 13; Def.'s Ans. to First Amend. Compl. ¶ 20; Def.'s Mot. Summ. Judg. at 2. Nor has a contracting officer issued a final decision under these contracts. A final decision of a contracting officer is a prerequisite for bringing an appeal to this Court. Because Plaintiff has not obtained a final decision with respect to contracts 049 and 234, claims relating to those contracts are dismissed without prejudice. 41 U.S.C. § 609(a)(3).

With respect to the remaining contracts at issue, there is no jurisdictional dispute. To the extent that Defendant is seeking a set-off for the overpayments made on three of the contracts awarded to Plaintiff, this Court has jurisdiction pursuant to 28 U.S.C. §§ 1503 and 2508.[12]

### Summary Judgment Standard

The Court may grant a motion for summary judgment if "there is no genuine issue as to any material fact and ... the moving

12. Section 1503 provides:
§ 1503. Set-offs
The United States Court of Federal Claims shall have jurisdiction to render judgment upon any set-off or demand by the United States against any plaintiff in such court.
Section 2508 provides in pertinent part:
§ 2508. Counterclaim or set-off; registration of judgment.

Upon the trial of any suit in the United States Court of Federal Claims in which any setoff, counterclaim, claim for damages, or other demand is set up on the part of the United States against any plaintiff making claim against the United States in said court, the court shall hear and determine such claim or demand both for and against the United States and plaintiff.

party is entitled to a judgment as a matter of law." RCFC 56(c). A genuine issue is one that "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit." *Id.* at 248. The movant has the burden of establishing the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once this burden is met, the onus shifts to the non-movant to point to sufficient evidence to show a dispute over a material fact that would allow a reasonable finder of fact to rule in its favor. *Liberty Lobby*, 477 U.S. at 256, 106 S.Ct. 2505. It is not necessary that such evidence be admissible, but mere denials, conclusory statements, or evidence that is merely colorable or not significantly probative will not defeat summary judgment. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Liberty Lobby*, 477 U.S. at 249–50, 106 S.Ct. 2505; *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390–91 (Fed.Cir.1987). A court does not "weigh" each side's evidence when considering a motion for summary judgment. *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1376 (Fed.Cir.2002). Rather, " 'the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

When considering cross-motions for summary judgment, the court evaluates each motion under the same standard. *Cubic Def. Sys., Inc. v. United States*, 45 Fed.Cl. 450, 457 (1999). If genuine disputes exist over material facts, both motions must be denied. *Mingus*, 812 F.2d at 1390–91.

13. Contract 002 presents a different issue. Defendant seeks a set-off for $8,508 representing overpayment for a portion of the fixed fee paid under the basic contract—not under the options, none of which were exercised. Modification P00001 to Contract 002 provided for a decrease in fixed fee from $21,882.00 to $13,374.00, but

## Contract Interpretation

The interpretation of a contract is a question of law, *NVT Techs., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed.Cir.2004), and is amenable to resolution on summary judgment. *Gov't Sys. Advisors, Inc. v. United States*, 847 F.2d 811, 813 (Fed.Cir.1988) (internal citation omitted). The United States Court of Appeals for the Federal Circuit recently articulated principles of contract interpretation in *NVT Techs.*, 370 F.3d at 1159:

> Contract interpretation begins with the language of the written agreement. *Foley Co. v. United States*, 11 F.3d 1032, 1034 (Fed.Cir.1993). When interpreting the contract, the document must be considered as a whole and interpreted so as to harmonize and give reasonable meaning to all of its parts. *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1434–35 (Fed.Cir. 1996). An interpretation that gives meaning to all parts of the contract is to be preferred over one that leaves a portion of the contract useless, inexplicable, void, or superfluous. *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed.Cir.1991).

370 F.3d at 1159.

The instant issue of contract interpretation is whether Plaintiff is entitled to payment of fixed fee on the maximum number of manhours capable of being exercised under a given option, or fixed fee on the incremental number of manhours actually exercised.[13]

Section B–1 provided that "the amount of each installment" of fixed fee on labor hours "shall bear the same proportion to the total amount of the fixed fee as the payment on ... allowable labor cost bears to the total estimated labor cost for the performance of ... an exercised option."

Section B–3 provided an Estimated Cost Schedule and the dollar amount of the fixed fee for the basic contract [856], stating:

Plaintiff was subsequently paid the $8,508 in response to a voucher. *See* Def.'s App. at 350–52; Pl.'s App. at 64. The record is unclear both as to what the $8,508 difference in fixed fee represented and as to whether the fixed fee should have been decreased.

The estimated total cost of this contract (including labor, material and travel) is $245,254.00. Fixed Fee, applicable to labor cost only, pursuant to B–1a above, is $10,780.00. *The estimated cost and fee associated with each option shall be stated in the contract modification in which the option is exercised.* [Pricing] of the option quantity shall be as stated in B–2.

Def.'s App. at 36 (emphasis added). Section B–2(a) set forth the labor cost and fixed fee on a *per hour* basis for Option I as follows:

a. Option I—Range: 1–154,800 manhours of engineering, technical and support labor, materials, and travel, which the Government may exercise in accordance with the provision "Exercise of Options" in Section H hereof. The estimated labor cost for [Option I] and fixed fee are as follows:

| Option I—Total | ESTIMATED LABOR COST/PER HOUR | FIXED FEE/ PER HOUR |
|---|---|---|
| (154,800 man hours) | $2,172,019/$14.03 | $170,206/$1.10 |

For purposes of pricing the exercise of manhour increments of Option I, a composite labor rate of $15.13 (inclusive of fixed fee) shall be used.

Def.'s App. at 35–36. Section B–2 further provided that "[t]he Government will estimate the total cost of material and travel associated with *single or multiple increments of options* at the time of exercise of the option." *Id.* (emphasis added).

Section H–9(a) provided:

The Government may increase the service called for herein by exercising one or more of the following options:

a. *Option I*—Option I or *increments* of one or more hours of Option I may be exercised at any time during the period 01 Sep 1989 through 31 Aug 1990. *The Government may exercise increments of Option I one or more times, up to but not exceeding the 154,800 manhour ceiling.*

Def.'s App. at 46 (emphasis added).[14]

Sections B–1, B–2 and H–9 establish that the exercise of manhour options in "installments" or "increments" was contemplated. Sections B–2 and H–9 set out a formula for determining the fixed fee once an increment for manhours in an option was exercised. Section H–9 provided that the Government could exercise any increment between 1 manhour and 154,800 manhours, and Section B–2(a) provided the per-hour rate for both the labor and fixed fee for each manhour exercised. For example, if the Government chose to exercise Option I for 50,000 of 154,800 manhours, the fixed fee would be determined by multiplying 50,000 times the hourly fixed fee in Section B–2(a)—$1.10—yielding a fixed fee of $55,000.

■ Plaintiff's interpretation of the contract to award fixed fee on maximum manhours irrespective of increments exercised would render Section B–2(a)'s hourly fixed fee rate and Section H–9's provision allowing for incremental exercise of options, meaningless. Further, Plaintiff's interpretation would be inconsistent with Section B–1's provision that payment of fixed fee on an installment of manhours be in proportion to total fixed fee. It is an axiom of contract interpretation that the contract must be considered as a whole and interpreted so as not to render portions of it meaningless. *M.A. Mortenson Co. v. Brownlee*, 363 F.3d 1203, 1206 (2004). In contrast to the specific references to payment of fixed fee at an hourly rate on manhours exercised under options,

14. The relevant language is identical for Options II and III as stated in Sections H–9(b) and H–9(c) and is not repeated here.

nothing in the contracts supports Plaintiff's theory that fixed fee on maximum manhours was payable whenever any increment of manhours was exercised.

■ Further, Plaintiff's interpretation would have the fixed fee bear no relationship to the labor costs for the manhours it accompanied. For example, Option VII of Contract R398 had a manhour ceiling of 67,500, but Defendant only exercised 596 of those manhours. Applying the hourly fixed fee rate of $2.3327, the total amount of fixed fee payable under Plaintiff's interpretation would be $157,458. This is roughly 8.5 times the amount of the *labor* cost paid for these hours, $18, 546 (596 × $31.1178). Moreover, Plaintiff's claimed fixed fee under this contract would be roughly 113 times the amount of fee payable for manhours actually exercised.

In contrast, Modification P00001 demonstrates the proper interplay of Sections B–1, B–2, B–3, and H–9. This Modification provided that an increment of Option I was being exercised for 42,126 manhours at a fixed fee of $46,338.60 which was derived by multiplying the hourly fee rate in B–2(a)—$1.10—by 42,126, the number of manhours being exercised.

Plaintiff's arguments in support of its interpretation wholly lack merit. First, Plaintiff argues that the use of a per hour fixed fee "is for pricing purposes only and not for performance under the contract." Pl.'s Mot. at 7. There is no support for plaintiff's construction. Each contract as a whole indicates that both pricing of labor and the fixed fee on each additional manhour were tied to the number of manhours exercised. Second, Plaintiff appears to suggest that the use of a composite labor rate indicated that fixed fee had to be paid on the maximum number of manhours which could have been exercised. *See* Pl.'s Repl. at 5, 12–13. In fact, the contracts' use of a composite hourly labor rate which expressly included the hourly fixed fee supports the interpretation that the fixed fee was payable in increments for labor hours actually exercised—just as the cost of the labor itself. Section B–2 specified: "For purposes of pricing the exercise of manhour increments in Option I, a composite labor rate (inclusive of fixed fee) shall be used."

Pl.'s App. at 112. Thus, each Contract tied the payment of fixed fee to "exercise" of "increments" and not to the unexercised manhour ceiling in the option. Third, Plaintiff argues that the Government subsequently changed the language in the basic contract and that this change supports Plaintiff's interpretation. Pl.'s Repl. at 16–17; *see* Pl.'s Suppl. App. at 328. Resort to this later contract is unnecessary in this context. In any event, the revised language does not help Plaintiff. That language provided: "[t]he maximum available fixed fee is based upon the number of hours awarded/exercised, with fixed fee being paid only for hours *actually worked.*" Pl.'s App. at 328. This change does not address whether payment of fixed fee is an hourly amount based upon incremental manhours exercised or a set amount based upon the manhour ceiling—it addresses a wholly different issue, *i.e.*, whether manhours which were "exercised" also had to be "worked" for the contractor to be paid at all under an option.

Finally, Plaintiff suggests that several FAR provisions require fixed fee to be paid on all manhours which could have been exercised because "the fixed fee cannot vary with actual costs" citing FAR 16.306(a), 52.216–8(a), 52.216–8(a), 52.232–20, and 32.705–2. Pl.'s Mot. Summ. Judg. at 8. These FAR provisions do not mandate payment of fee on maximum manhours which could have been exercised. Rather, the Government's construction of the contracts is consistent with these FAR provisions. The fixed fee was a firm and consistent hourly rate, based upon the hourly labor rate. The fixed fee did not vary with costs, but was to be applied uniformly to the cost of each labor hour exercised. In short, neither the contracts nor the FAR support Plaintiff's claimed entitlement to fixed fee on optional labor hours which were not exercised.

### Course of Dealing

■ Plaintiff contends that Defendant's payment of fixed fee on maximum manhours even though they were not all exercised under four contracts, established a course of dealing, entitling Plaintiff to be paid a fixed fee on maximum manhours regardless of the number of manhours actually exercised un-

der six other contracts.[15] Plaintiff relies upon *Sperry Flight Sys. v. United States,* 212 Ct.Cl. 329, 548 F.2d 915, 923 (1977). In *Sperry,* the Court of Claims stated that "a course of dealing can supply an enforceable term to a contract (or may even supplement or qualify that contract) provided that the conduct which identifies that course of dealing can reasonably be construed as indicative of the parties' intentions—a reflection of their joint or common understanding." *Id.* at 923. Here, the parties' conduct does not consistently demonstrate their common understanding as to how fixed fee on optional manhours was to be paid.

Moreover, *Sperry* does not support payment of the maximum fee to Amtec here based upon a course-of-dealing theory. As the *Sperry* court stated:

> No facts are offered that would establish or even allow an inference that the Government, by having accepted plaintiff's catalog prices on past occasions, thereby intended to commit itself to continue such a practice into the future. Not only would there be no contractual purpose served by such a commitment, to the contrary, the idea abridges the flexibility that the Government must necessarily retain in order to carry out its purchases properly on a negotiated basis. In effect, what plaintiff argues for is a contract right that would undermine the authority and responsibility vested in a contracting officer to obtain for the Government the benefit of fair and reasonable prices. Even assuming such a result could lawfully be brought about, nothing has been shown here that would justify placing the Government in so irretrievable a position.

548 F.2d at 923. *A fortiori,* the Government ought not be forced to continue paying a fixed fee erroneously paid.[16] Nor does Plaintiff's reliance on *Gresham & Co. v. United States,* 200 Ct.Cl. 97, 470 F.2d 542, 554–55 (1972), help its cause. *Gresham* involved the Government's acquiescence in the contractor's performance which did not meet specifications, not a perpetuation of unwarranted, erroneous payments. In sum, Defendant's past erroneous overpayments did not establish a course of dealing entitling Plaintiff to a greater fixed fee than authorized under the contracts.

### The Government is Entitled To Recover Fixed Fee Erroneously Paid

■ "It is a well-settled principle that the Government has inherent authority to recover sums illegally or erroneously paid, and that it cannot be estopped from doing so by the mistakes of its officers or agents." *Aetna Cas. & Sur. Co. v. United States,* 208 Ct.Cl. 515, 520, 526 F.2d 1127 (1975), *cert. denied,* 425 U.S. 973, 96 S.Ct. 2172, 48 L.Ed.2d 797 (1976); *see also United States v. Wurts,* 303 U.S. 414, 415, 58 S.Ct. 637, 82 L.Ed. 932 (1938); *American Nat'l Bank & Trust Co. v. United States,* 23 Cl.Ct. 542, 547 (1991); *Fansteel Metallurgical Corp. v. United States,* 145 Ct.Cl. 496, 499–501, 172 F.Supp. 268 (1959); *Wright Runstad Props. Ltd. P'ship,* 40 Fed.Cl. 820, 827 (1998).

While Defendant is entitled to recover erroneous overpayments representing fixed fee on unexercised manhour options under Contracts 856 and 860, the Court is unable to determine from the record before it the precise quantum due Defendant. Specifically, the Court is unable to ascertain the total number of manhours actually exercised un-

---

**15.** Plaintiff cites Defendant's payments under Contracts 856, 860, 002 and R391 in support of its claim for like payments under Contracts R312, R398, R394, R015, R049 and R234.

The Government does not seek reimbursement for overpayment on contract R391, in which it allegedly overpaid $101,306, because Modification P00053 to contract R391 stated, "AMTEC has final [sic] invoiced and been paid in full. This modification constitutes full and final settlement." Def.'s App. at 405; Def.'s Repl. at 15.

**16.** There is no basis for continuing such payments. Each of the vouchers paid by the Gov-

ernment expressly indicated "PROVISIONAL PAYMENT SUBJECT TO LATER AUDIT." *See* Pl.'s Suppl. App. at 484, 496, 512, 526, 600 and 621. The contracting officer did not receive the DCAA Audit Reports until long after approving Plaintiff's vouchers for contracts 856 and 860. Def.'s App. at 110A; Pl.'s App. at 13–29. The final vouchers for contracts 856 and 860 showed credits owed to Defendant by Plaintiff. Def.'s. App. at 107, 124. The contracting officer mistakenly paid Plaintiff the fixed fee it demanded, contrary to those credits.

der the options in Contracts 856 and 860, and therefore, cannot ascertain the correct amount that should have been paid to Plaintiff as fixed fee under those options or the amount Plaintiff was overpaid. The Court thus grants Defendant's motion for summary judgment as to entitlement, but not quantum, with respect to the recoupment of fixed fee claimed under Contracts 856 and 860.

The record is unclear as to whether there was properly a reduction of fixed fee under the basic Contract 002, and the Court denies Defendant's motion for summary judgment seeking recoupment of the overpayment under this contract at this juncture.

### Conclusion

1. Plaintiff's motion for summary judgment is **DENIED**.
2. Defendant's cross-motion for summary judgment is **GRANTED** in part.
3. The parties shall file proposed redactions to this decision no later than **Friday, December 9, 2005.** Good cause shall be shown for any requested redactions.
4. The Court will conduct a telephonic status call on **January 6, 2006, at 11 a.m. EST** to schedule further proceedings in this action. It is so **ORDERED**.